UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CAMERON SMITH,

       Plaintiff,

   v.

BIOWORKS, INC.,

       Defendant.

NO. CIV. S-05-1650 FCD EFB

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Defendant has also filed a motion for Rule 11 sanctions against plaintiff and his attorney.  The court heard oral argument on the motions on January 26, 2007.  For the reasons set forth below, defendant's motion for summary judgment is GRANTED, plaintiff's cross-motion for summary judgment DENIED, and defendant's motion for Rule 11 sanctions is DENIED.

///

///

**BACKGROUND**[1]

Plaintiff Cameron Smith ("Smith") was an employee of defendant BioWorks, Inc. ("BioWorks"). (See RUF ¶ 1).[2]  Shortly after accepting an offer of employment with defendant, on October 1, 1997, plaintiff signed a document entitled "Proprietary Information, Inventions, and Noncompetition Agreement" ("Confidentiality Agreement"). (RUF ¶ 1).  The non-compete clause of the Confidentiality Agreement states that its duration is "for so long as [plaintiff is] employed by the Company and for one year after termination," with an extension provision that states if plaintiff breached any provision of the non-compete covenant, "the term of this covenant shall be extended by a

---

[1]  The facts are undisputed except where otherwise noted. (See Def.'s Reply Stmt. of Uncontroverted Facts in Supp. of Mot. for Summ. J. ("RUF"), filed Jan. 19, 2007).

However, the court notes that several documents attached to defendant's Evidence in Support of Summary Judgment are not properly authenticated pursuant to Rule 901.  However, none of plaintiff's objections address the admissibility of the underlying documents, and plaintiff cites to one such unauthenticated document in his Statement of Undisputed Facts. (See Pl.'s Stmt. of Undisp. Facts, filed Jan. 12, 2007).  As such, for the purposes of this motion, the court considers such documents to be true and correct copies.

[2]  Plaintiff filed a multitude of objections to defendant's evidence.  Plaintiff made general objections to defendant's motion and arguments.  These objections are without merit and OVERRULED.  Plaintiff also objects to the statements made in defendant's statement of undisputed facts; his objections are aimed at the phrasing of the statements, not the underlying evidence upon which they are made.  Such statements are not evidence themselves, but a summary of the material fact contained in the cited evidence, which the court has reviewed independently.  See Local Rule 56-260.  Plaintiff's objections to these statements are baseless and OVERRULED.  Finally, plaintiff also objects to certain portions of the Declaration of William J. Foster.  Foster is competent to testify to the matters set forth in his declaration due to his position as President of defendant BioWorks, Inc., and plaintiff's objections are OVERRULED.

number of days equal to the number of days [plaintiff is] in breach." (RUF ¶ 5; Ex. E to Decl. of William J. Foster ("Foster Decl."), filed Dec. 27, 2006). On December 2, 2004, BioWorks terminated plaintiff's employment based upon his "unacceptable performance as a BioWorks Sales Manager." (RUF ¶ 2; Ex. F to Foster Decl.).

During plaintiff's termination meeting, the non-compete clause in the Confidentiality Agreement was not discussed. (RUF ¶ 3). Following plaintiff's termination from BioWorks, the only time William J. Foster ("Foster"), the President and CEO of BioWorks, addressed the issue of the non-compete clause in the Confidentiality Agreement with plaintiff was in a letter to plaintiff, dated December 7, 2004. (RUF ¶ 4). In relevant part, the letter provided, "Also recall the confidentiality agreement signed by you on October 1, 1997 (copy attached) regarding maintaining the confidentiality of company information, including technical data, customer lists, marketing plans, and pricing strategies." (Ex. H to Evidence in Supp. of Summ. J. ("Evidence"), filed Dec. 27, 2006).

The parties agree that plaintiff did not breach any provision of the non-compete clause of the Confidentiality Agreement and that BioWorks did not communicate to plaintiff that it believed plaintiff was in breach of the non-compete clause of the Confidentiality Agreement. (RUF ¶¶ 6-7). The parties also agree that plaintiff's post-termination business activities do not violate California's Uniform Trade Secrets Act and that plaintiff's current employment or business activities conform with and otherwise do not violate the terms and conditions

3

contained in Agreements executed by the Parties during their employment relationship.  (RUF ¶¶ 8-9).  Finally, plaintiff also agrees that plaintiff's employment or business activities constitute fair competition against defendant and do not constitute a violation of other federal or state laws.  (RUF ¶¶ 10-11).

During his employment with BioWorks, plaintiff also signed and expressed his assent to the written terms of BioWorks Incentive Stock Option Agreements on November 3, 1997 and on June 1, 1998.  (RUF ¶¶ 24-25).  The terms of these agreements provide:

> If Optionee's employment with the Company or any of its Affiliates terminates for cause during the Option Period, the Option period shall terminate on the date of such Optionee's termination of employment and the option shall not thereafter be exercisable to any extent.

(Ex. J-L to Evidence).  By letter dated December 2, 2004, Foster stated that "[u]nder the terms of the Agreement, [plaintiff was] granted the option of purchasing 15,000 shares of the Company's Common Stock" and that those 15,000 shares had vested as of December 2, 2004.  (Ex. F to Foster Decl. at 3).  The letter also stated that the period in which plaintiff may exercise his options terminated on March 1, 2005.  (Ex. F to Foster Decl. at 3).  By letter dated December 20, 2004, plaintiff wrote that he reserved the right "to exercise his stock options for ten years," reserved the right "to dispute the valuation and or sales price of the stock options," and asserted that his options totaled 25,000 options, not 15,000 options.  (Ex. I to Evidence).  In response, by letter dated January 10, 2005, Foster informed plaintiff that upon further review of the claim to option

4

1   entitlement, "we find that you have no legal right to exercise
2   any options whatsoever" because plaintiff was terminated for
3   cause.  (Ex. J to Foster Decl.).

4       Plaintiff filed a complaint in this court on August 8, 2005,
5   asserting claims for declaratory relief, breach of oral or
6   written agreements and promises, and breach of the implied
7   covenant of good faith and fair dealing.  On January 4, 2006,
8   defendant filed an answer, denying the allegations relating to
9   plaintiff's requested declaratory relief.  (Answer, filed Jan. 4,
10  2006, ¶ 26).  On December 27, 2006, defendant filed this motion
11  for summary adjudication and for sanctions.  On January 12, 2007,
12  plaintiff filed his oppositions and a cross-motion for summary
13  judgment.[3]

14                              **STANDARD**

15  **A.   Summary Judgment**

16      Summary judgment is appropriate when it is demonstrated that
17  there exists no genuine issue as to any material fact, and that
18  the moving party is entitled to judgment as a matter of law.
19  Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144,
20  157 (1970).
21  /////

22

23      [3]   Defendant objects to plaintiff's filing of a cross-
    motion for summary judgment and asks this court to strike
24  plaintiff's cross-motion.  Defendant contends that plaintiff did
    not timely notice and file his motion in accordance with Local
25  Rule 78-230.  However, Local Rule 78-230(e) provides that "any
    counter-motion or other motion that a party may desire to make
26  that is related to the general subject matter of the original
    motion shall be served and filed with the Clerk in the manner and
27  on the date prescribed for the filing of opposition."  Because
    plaintiff's cross-motion comports with Local Rule 78-230(e),
28  defendant's motion to strike is DENIED.

1      Under summary judgment practice, the moving party

2      always bears the initial responsibility of informing
       the district court of the basis of its motion, and
3      identifying those portions of "the pleadings,
       depositions, answers to interrogatories, and admissions
4      on file together with the affidavits, if any," which it
       believes demonstrate the absence of a genuine issue of
5      material fact.

6  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the

7  nonmoving party will bear the burden of proof at trial on a

8  dispositive issue, a summary judgment motion may properly be made

9  in reliance solely on the 'pleadings, depositions, answers to

10 interrogatories, and admissions on file.'"   Id. at 324.  Indeed,

11 summary judgment should be entered against a party who fails to

12 make a showing sufficient to establish the existence of an

13 element essential to that party's case, and on which that party

14 will bear the burden of proof at trial.  Id. at 322.  In such a

15 circumstance, summary judgment should be granted, "so long as

16 whatever is before the district court demonstrates that the

17 standard for entry of summary judgment, as set forth in Rule

18 56(c), is satisfied."  Id. at 323.

19     If the moving party meets its initial responsibility, the

20 burden then shifts to the opposing party to establish that a

21 genuine issue as to any material fact actually does exist.

22 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

23 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

24 253, 288-289 (1968).  In attempting to establish the existence of

25 this factual dispute, the opposing party may not rely upon the

26 denials of its pleadings, but is required to tender evidence of

27 specific facts in the form of affidavits, and/or admissible

28 discovery material, in support of its contention that the dispute

6

exists.  Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Id. at 251-52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 289.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be ///

7

drawn.  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586-87, 106 S. Ct. at 1356.

**B.   Rule 11 Sanctions**

Rule 11 provides that the district court may impose sanctions upon attorneys or parties "[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated . . . ." Fed. R. Civ. P. 11(c)).  As an initial inquiry, the district court must determine whether a violation of Rule 11(b) has occurred.  <u>See Warren v. Guelker</u>, 29 F.3d 1386, 1388 (9th Cir. 1994).  If a violation is found, the court may in its discretion decide to impose sanctions.  Fed. R. Civ. P. 11(c)); <u>Guelker</u>, 29 F.3d at 1388 N.1 (9th Cir. 1994); <u>see also</u> 2 Wm. J. Moore, Federal Practice § 11.23(2) (3d ed. 2003).  Sanctions are limited to what is "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(b)(2)(A).  The court has broad discretion to choose the appropriate type of sanction to achieve the Rule's goal of deterring future violations.  <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 633 (1962).

Pursuant to Rule 11, every pleading, motion, and other paper presented to the court must be signed by the attorney or an

unrepresented party.  By presenting to the court a pleading,
motion or other paper, an attorney or party represents that "the
claims, defenses and other legal contentions therein are
warranted by existing law or by a nonfrivolous argument for the
extension, modification, or reversal of existing law or the
establishment of new law[.]"  Fed. R. Civ. P. 11(a)(b), (b)(2).
The certification requirements of Rule 11 are violated "if the
paper filed . . . is frivolous, legally unreasonable or without
factual foundation, even though . . . not filed in subjective bad
faith."  Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 (9th
Cir.1986), overruled on other grounds by, Cooter & Gell v.
Hartmarx Corp., 496 U.S. 384 (1990). See also Townsend v. Holman
Consulting Corp., 929 F.2d 1358, 1362-65 (9th Cir.1990)(en banc).

**ANALYSIS**

**A.   Declaratory Relief**

Plaintiff's requests declaratory judgment from this court,
finding that (1) plaintiff's post-termination business activities
do not violate California's Uniform Trade Secrets Act; (2)
plaintiff's current employment or business activities conform
with and otherwise do not violate the terms and conditions
contained in Agreements executed by the parties during their
employment relationship; (3) plaintiff's employment or business
activities constitute fair competition against defendant; (4)
plaintiff's current employment or business activities do not
constitute a violation of other federal or state law; (5)
defendant's employment contracts or agreements dealing with non-
competition and non-solicitation are illegal, void, and
unenforceable; and (6) as a prevailing party in this action,

9

1  plaintiff is entitled to reimbursement of all attorneys' fees and
2  costs incurred in pursuing the matter before, during, and after
3  litigation of the case.[4]  (Compl. ¶ 25).

4      Defendant does not oppose plaintiff's first four requests
5  for declaratory relief.  (RUF ¶¶ 6-11).  Rather, defendant
6  contends that because it does not dispute these issues, there is
7  no justiciable controversy, and thus, plaintiff's claims should
8  be dismissed.

9      Section 1060 of the California Code of Civil Procedure[5]
10  provides that "[a]ny person interested under a . . . contract"
11  may bring a claim for "a declaration of his or her rights and
12  duties" "in cases of actual controversy."  Cal. Code of Civ.
13  Proc. § 1060 (West 2006).  Decisions interpreting § 1060 "have
14  held declaratory relief to be proper only where there is a
15  justiciable controversy as distinguished from a difference or
16  dispute of a hypothetical or abstract character, from one that is
17  academic or moot."  School Dist. v. Rafferty, 226 Cal. App. 2d
18  599, 602-03 (1st Dist. 1964) (citing Monahan v. Dept. of Water &
19  Power, 48 Cal. App. 2d 746, 750-51 (1941)).  "Where it is
20  apparent that the defendant does not actually oppose the position

21

22      [4]  Plaintiff clarified at oral argument that these were
23  the only requests at issue under his claim for declaratory
    relief.  To the extent that the prefatory statement of
    plaintiff's complaint included other claims for declaratory
24  relief, the court views them as voluntarily dismissed.

25      [5]  Plaintiff generally alleges a claim for declaratory
26  relief in his Complaint.  Because this is a diversity action, and
    because plaintiff alleges that California law applies in this
    action, the court applies California's declaratory relief statute
27  to plaintiff's claims.  (Complaint, filed Aug. 8, 2005, ¶ 4).
    Further, plaintiff's opposition and cross-motion references §
28  1060 of the California Code of Civil Procedure.

taken by the plaintiff, there obviously can be no controversy and there is nothing to be determined by the court."  <u>Id.</u> (citing <u>Maxwell v. Brougher</u>, 99 Cal. App. 2d 824, 828 (1950)); <u>see also</u> <u>Application Group, Inc. v. Hunter Group, Inc.</u>, 61 Cal. App. 4th 881, 893 (1st Dist. 1998) (stating that in a declaratory relief action, where defendant "never really disputed and indeed, conceded" to plaintiff's interpretation, "declaratory relief would be inappropriate").

Foster declared, under penalty of perjury, that on behalf of defendant BioWorks, he believes that plaintiff's post-termination activities did not (1) breach any provision of the non-compete clause; (2) violate California's Uniform Trade Secret Act; (3) violate any terms and conditions contained in Agreements executed during the employment relationship; or (4) violate other federal or state laws.  (Foster Decl. ¶¶ 11, 13, 15, 19).  Foster also declared that he never attempted to enforce any term of the non-compete clause against plaintiff nor did he express to plaintiff that he believed any violations had occurred as a result of his post-termination activities.  (Foster Decl. ¶¶ 12, 14, 16, 20).

Plaintiff raises no clear argument and cites no case law in opposition to defendant's motion.  Rather, plaintiff asserts that Foster's declaration is perjured,[6] and thus, "anything that defendant or counsel says [is] extremely suspect." (Pl.'s Opp'n, filed Jan. 12, 2007, at 15).  Specifically, plaintiff points to the portion of Foster's declaration that provides:

---

[6]    The court notes that it does not take accusations of perjury and misconduct lightly.  Parties should be wary of making such serious accusations without evidentiary support.

1         I never expressed to plaintiff that I believed
     plaintiff was in violation of any terms and conditions
2    contained in the Agreements executed by the parties. .
     . . I am not aware of any attempt by BioWorks to
3    express to plaintiff that BioWorks believed plaintiff
     was in violation of any terms and conditions contained
4    in Agreements executed by the parties during their
     employment relationship.

5

6    (Foster Decl. ¶¶ 14, 16). Plaintiff argues that this statement

7    contradicts averments made in defendant's Answer to plaintiff's

8    Complaint which assert that plaintiff "specifically stole,

9    converted, and/or destroyed property belonging to the defendant."

10   (Answer, filed Jan. 4, 2006, ¶ 14). As an initial matter, Foster

11   is not a named defendant in this action, and thus, statements of

12   defendant BioWorks can not be attributed to Foster *per se*.

13   Further, the averment cited to does *not* assert that plaintiff

14   breached any *Agreement*; rather, it disputes plaintiff's

15   contentions that plaintiff "dutifully and in good faith" returned

16   defendant's property. As such, there is no contradiction between

17   statements made in Foster's declaration and averments made by

18   defendant in its answer. Essentially, plaintiff asks this court

19   to disregard a declaration, submitted under penalty of perjury,

20   based solely on alleged "inconsistencies" with averments

21   contained in the defendant's answer, signed by defendant's

22   counsel. The court will not do so.

23        Based upon Foster's declaration and the absence of any

24   evidence that defendant attempted to enforce the non-compete

25   provisions of the Confidentiality Agreement or charge plaintiff

26   with the aforementioned violations, it is clear that there is no

27   justiciable controversy under § 1060 of the California Code of

28   Civil Procedure as to plaintiff's first four claims for

declaratory relief.  As such, defendant's motion for summary

judgment on these four requests for declaratory relief is

GRANTED.

Defendant asserts that plaintiff's fifth request for a

finding that defendant's employment contracts or agreements

dealing with non-competition and non-solicitation are illegal,

void, and unenforceable is also not an "actual controversy" under

§ 1060 because the issue is moot.  Defendant argues that the non-

compete clause at issue expired in December 2005, and therefore,

there is no longer a current controversy for this court to

adjudicate.

It is undisputed that, by its terms, the non-compete clause

in the Confidentiality Agreement was in effect for one year after

plaintiff's termination from employment and could be extended by

the number of days for which plaintiff was in breach.  (RUF ¶ 5).

Further, as set forth above, the parties do not dispute that

plaintiff was never in breach of the non-compete clause of the

Confidentiality Agreement.  (RUF ¶ 6).  Therefore, the non-

compete clause could not be extended beyond the one year period

provided in the Confidentiality Agreement.  Because plaintiff's

employment was terminated on December 2, 2004, (RUF ¶ 2), the

non-compete clause expired on December 2, 2005.

Because the non-compete clause expired well before this

issue came before the court, and because there is no evidence to

indicate that plaintiff faces any further liability under this

clause, plaintiff's claims for declaratory relief under § 1060 of

///

///

13

the California Code of Civil Procedure are MOOT.[7]  <u>See</u>
<u>Application Group</u>, 61 Cal. App. 4th at 894 (vacating a portion of
the judgment of the district court which adjudicated the merits
of a claim for declaratory relief relating to a non-compete
clause that had expired during the pendency of the proceedings);
<u>see also</u> <u>Morcote v. Oracle Corp.</u>, 2005 WL 3157512 at *4-5 (N.D.
Cal. Nov. 23, 2005) (granting defendants' motion to dismiss
plaintiff's claim for declaratory relief where the non-compete
provision expired prior to the filing of the complaint).  As
such, defendant's motion for summary judgment on plaintiff's
fifth request for declaratory relief is GRANTED.

Plaintiff contends that "[w]hat is at issue in this case is
[d]efendant's use of illegal noncompete agreements against
[p]laintiff and other California employees," (Pl.'s Opp'n at 7),
and that there is an actionable controversy because "[p]laintiff
has suffered the 'in terrorem' effect that Section 16600[8] . . .
[has] sought to avoid." (Pl.'s Opp'n at 17).  Plaintiff's
lawsuit is *not* a class action about non-compete clauses
*generally*, but is a claim by plaintiff against defendant

---

[7]     At oral argument, plaintiff asserted that this claim
was not moot because defendant could bring an action for breach
of the non-compete clause in the future.  However, as set forth
above, Foster, as President and CEO of defendant BioWorks, signed
a declaration under penalty of perjury, stating that plaintiff's
post-termination activities did not breach the non-compete clause
of the Confidentiality Agreement. (Foster Decl. ¶ 11).  As such,
there is no plausible threat that defendant will sue plaintiff in
the future for such a breach.

[8]     Section 16600 of the California Business & Professions
Code provides that "Except as provided in this chapter, every
contract by which anyone is restrained from engaging in a lawful
profession, trade, or business of any kind is to that extent
void." (West 2006).

regarding the enforceability of a specific agreement, the terms of which have expired.   Plaintiff fails to cite any authority to support the position that the court should grant declaratory relief regarding the validity of an expired agreement.   The sole case plaintiff relies upon, <u>Latona v. Aetna U.S. Healthcare</u>, 82 F. Supp. 2d 1098 (C.D. Cal. 1999), describes the purpose of § 16600 and the *in terrorem* effect of non-compete provisions in the context of a wrongful termination in violation of public policy claim; <u>Latona</u> does not address any issue relating to the mootness of declaratory relief in the circumstances presented in this case.

Finally, defendant argues that plaintiff is not entitled to his sixth request for declaratory judgment that he is a prevailing party and entitled to attorneys fees costs because he is not and cannot be the prevailing party.   For the reasons set forth above, plaintiff has not prevailed on any of his claims for declaratory relief.   For the reasons set forth herein, plaintiff has also not prevailed on his claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Therefore, plaintiff is not a prevailing party, and defendant's motion for summary judgment regarding plaintiff's sixth request for declaratory relief is GRANTED.

**B.   Breach of Contract[9]**

///

---

[9]      Plaintiff clarified at oral argument that the only contracts at issue under his claim for breach of contract are the Confidentiality Agreement and the stock options agreement.   To the extent that the allegations in plaintiff's complaint could be read to include claims for breach of other contracts or promises, the court views them as voluntarily dismissed.

### 1.   Confidentiality Agreement

Plaintiff claims damages that resulted from defendant's alleged breach of contract.  Plaintiff argues that defendant breached the Confidentiality Agreement.  However, the court cannot discern the basis for this claim.  Plaintiff has not identified nor provided evidence that defendant failed to breach a duty owed plaintiff under the Confidentiality Agreement.  The most comprehensible statement plaintiff makes in his cross-motion and opposition provides:

> What happened is that Plaintiff was looking for work. About a month into his job search prospective employers asked if Plaintiff had a noncompete agreement.  At that point, Plaintiff panicked and began doing some research on the Internet so to find out about his rights. Later, after retaining counsel, yet another prospective employer asked if Plaintiff had a noncompete agreement with BioWorks.  Plaintiff though at the time that at any moment he could get sued so he had to figure out a way to resolve his fears, which were reasonable considering Defendant's treatment of him after his leaving the company.

(Pl.'s Opp'n at 22).  Plaintiff's summation of his version of the facts fails to enlighten the court as to the basis for plaintiff's claim for breach of contract.  To the extent that plaintiff is attempting to argue that the existence of the non-compete provision contained in the Confidentiality Agreement somehow breached the contract *ab initio*, plaintiff cites no support for the unique legal theory that the formation[10] and enforcement of an allegedly illegal contract gives rise to a claim for a breach of that same contract.  Nor is the court

---

[10]   Further, there is no evidence that defendant ever sought to enforce this provision.

willing to expand the outer boundaries of contract law in order
to allow plaintiff to prevail on this theory.   Therefore,
defendant's motions for summary judgment regarding plaintiff's
claim for breach of the Confidentiality Agreement is GRANTED.[11]

### 2.   Stock Options Agreement

Plaintiff claims that defendant breached Incentive Stock
Option Agreements and seeks the return of vested stock options.
The Incentive Stock Option Agreements signed by plaintiff
provide, in relevant part:

> If Optionee's employment with the Company or any of its
> Affiliates terminates for cause during the Option
> Period, the Option period shall terminate on the date
> of such Optionee's termination of employment and the
> option shall not thereafter be exercisable to any
> extent.

(Ex. J-L to Evidence).   On December 2, 2004, defendant terminated
plaintiff's employment based upon his "unacceptable performance
as a BioWorks Sales Manager."  (Ex. F to Foster Decl.).   As such,
plaintiff was terminated for cause.   Under a clear reading of the
Incentive Stock Option Agreements, the option period terminated
on the December 2, 2004, and any options plaintiff had accrued
were not exercisable to any extent thereafter.

Plaintiff argues that despite being fired for poor
performance, defendant informed plaintiff that he would receive
his vested stock options.   In plaintiff's termination letter,
defendant stated that "[u]nder the terms of the [1997]

---

[11]    To the extent that plaintiff's cross-motion asserted a
breach of contract based upon the attorneys' fees provision,
plaintiff's counsel conceded at oral argument that such a claim
was based upon plaintiff prevailing, at least in part, in this
action.

Agreement," plaintiff was eligible to purchase 15,000 shares of stock at $1.90 per share up until March 1, 2005 and under the 1998 agreement, plaintiff was eligible to purchase 2,500 shares of stock at $1.75 per share up until March 1, 2005. (Ex. F to Foster Decl. at 3). Plaintiff contends that he signed the Severance and Release Agreement, thereby accepting defendant's offer regarding exercising his stock options. Defendant contends that plaintiff did not unequivocally accept the offer, and therefore, no contract was formed. Plaintiff argues that he signed the release and merely included "questions" about the number of options he should receive.[12]

California law is clear that acceptance of an offer "must be absolute and unqualified . . . . A qualified acceptance is a new proposal." Cal. Civ. Code § 1585 (West 2006). A qualified acceptance "constitutes a rejection terminating the offer; it is a new proposal of counteroffer which must be accepted by the former offeror now turned offeree before a binding contract results." Landberg v. Landberg, 24 Cal. App. 3d 742, 750 (1972) (citations omitted).

Assuming that the terms contained in plaintiff's termination letter constituted an offer to extend stock options despite his termination for cause, plaintiff replied to this offer by letter dated December 20, 2004. The letter provides that it accompanies

---

[12] Plaintiff argued at oral argument that the statements regarding stock options in the termination letter did not constitute an offer, but rather was a "statement of fact." It is unclear how the revocation of a "statement of fact" gives rise to a claim for breach of contract if there was never a meeting of the minds between the parties.

the signed Severance and Release Agreement.  However, plaintiff's letter also provides

> I am reserving my right to exercise my stock options for ten years (as per Rus Howard's agreement)[13] from the date this agreement is signed.  I am reserving my right to dispute the valuation and or sales price of the stock options.  I am asserting my right to exercise all of my options which total 25,000 options, not 15,000 options so noted in the 12-2-04 termination agreement.

(Ex. I to Evidence).[14]  Plaintiff's "reservation of rights" and dispute over the number of options offered by defendant cannot be accurately described as "questions."  Plaintiff did not seek to clarify issues relating to the terms set forth in the December 2, 2004 termination letter.  Plaintiff's reservation and assertion of rights makes clear that he signed the Agreement with the proviso that he did not accept certain terms.  Because plaintiff's letter constituted only a qualified acceptance, no binding contract was formed, and the rejection terminated defendant's offer.  Defendant's response letter, dated January 10, 2005, does not indicate an acceptance of plaintiff's counter-offer.  (Ex. J to Foster Decl.).  Rather, defendant's letter provides that, pursuant to the Incentive Stock Option Agreements and due to plaintiff's termination for cause, plaintiff is not entitled "to exercise any options whatsoever."  (Id.)

///

---

[13]     There is no evidence presented regarding this agreement in the submissions of either party.

[14]     Plaintiff's response letter also disputed the calculation of his accrued vacation leave, a deduction from his last pay period for health insurance, and requested written confirmation regarding FICA payments.  (Ex. I to Evidence).

1    Plaintiff argues that defendant took back plaintiff's stock
2    options in order "to bully [p]laintiff because he had dared to
3    ask any questions in regards to stock option and other benefits
4    and wages." (Pl.'s Opp'n at 23).  The court does not opine on
5    defendant's motivation in not offering plaintiff the right to
6    exercise stock options in the January 10, 2005 letter, nor is
7    such motivation relevant to this inquiry.  Even if defendant
8    offered plaintiff the right to exercise stock options in the
9    December 2, 2004 letter, plaintiff rejected such offer through
10   his qualified acceptance in his December 20, 2004 letter.  As
11   such, there was no binding contract between plaintiff and
12   defendant giving plaintiff the right to exercise stock options
13   after his termination date.  Thus, defendant did not breach any
14   contract by its failure to give plaintiff his vested stock
15   options.  Defendant's motion for summary judgment regarding
16   plaintiff's claim for breach of contract as it applies to his
17   stock option claim is GRANTED.

18   **C.   Breach of Implied Covenant of Good Faith and Fair Dealing**

19        Plaintiff claims that defendant breached the implied
20   covenant of good faith and fair dealing.  "Every contract imposes
21   upon each party a duty of good faith and fair dealing it its
22   performance and its enforcement."  <u>Foley v. Interactive Data</u>
23   <u>Corp.</u>, 47 Cal. 3d 654, 683 (1988) (quoting Rest. 2d Contracts, §
24   205).  This covenant "exists merely to prevent one contracting
25   party from unfairly frustrating the other party's right to
26   receive the *benefits of the agreement actually made*."  <u>Guz v.</u>
27   <u>Bechtel. Nat'l Inc.</u>, 24 Cal. 4th 317, 349 (2000) (emphasis in
28   original).  Therefore, the covenant "cannot be endowed with an

existence independent of its contractual underpinnings" and "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." Id. at 349-50 (internal citations omitted). Plaintiff states that the contracts applicable to his breach of covenant claim include (1) the Confidentiality Agreement; (2) promises contained in the Employee Handbook; and (3) the Stock Options Agreement.

In regards to the Confidentiality Agreement and the Employee Handbook,[15] plaintiff argues that "in exchange for [p]laintiff honoring his promises in the Agreement, [d]efendant in turn would in return reciprocate and honor its obligations as [p]laintiff's employer, including the terms contained in the Agreement." (Pl.'s Opp'n at 25). However, plaintiff does not identify, nor does he provide evidence of, what obligations defendant owed plaintiff and failed to fulfill in order to constitute a breach of the covenant.

In regards to the stock option claim, as set forth above there was no binding contract between plaintiff and defendant that gave plaintiff the right to exercise stock options after his termination date. The only valid, applicable contracts relating to stock options are the Incentive Stock Option Agreements signed

---

[15]   Plaintiff does not specifically identify what portions of the Employee Handbook created a contract and thus a covenant, which was allegedly breached by defendant. However, based upon plaintiff's arguments and his Statement of Undisputed Material Facts, the court infers that plaintiff is referring to the provision of the Employee Handbook which states that employees are required to sign the Confidentiality Agreement. (Pl.'s Statement of Undisputed Material Facts ("PUF"), filed Jan. 12, 2007, ¶¶ 7-8).

by plaintiff in 1997 and 1998, which provided that if terminated
for cause, plaintiff is not entitled to exercise any stock
options after the date of termination.   Plaintiff has not
provided any evidence that defendant breached the covenant of
good faith and fair dealing in its performance and enforcement of
this contract.

**D.   Rule 11 Sanctions**

Defendant moves for Rule 11 sanctions in the amount of
approximately $44,300, which is BioWorks asserts is approximately
the amount of fees and costs incurred by BioWorks in this
litigation matter to date.   Defendant argues that Rule 11
sanctions are warranted because plaintiff and his counsel filed
and reaffirmed a frivolous complaint, filed for an improper
purpose.[16]

The court does not find that plaintiff's conduct violated
Rule 11(b).   Plaintiff's first four requests for declaratory
relief do not present a justiciable controversy based upon
statements made in the Foster declaration.   However, there is no
evidence that plaintiff or his counsel was made aware of
defendant's position on this issue prior to the filing of
defendant's motions for Rule 11 Sanctions and Summary Judgment.
To the extent that plaintiff was not aware of defendant's
position that plaintiff's post-termination activities were not in
breach of the non-compete clause of the Confidentiality
Agreement, it was not necessarily apparent to plaintiff that the

_____

[16]   Defendant presents no evidence in support of its claim
that the complaint was filed or reaffirmed for an improper
purpose.   Therefore, the court does not address this argument.

22

non-compete provision had expired in December 2005, based upon
the tolling provision contained in the clause.  Therefore,
plaintiff's claims for declaratory relief were not frivolous.

As to plaintiff's claims for breach of contract and breach
of the covenant of good faith and fair dealing, plaintiff's
claims relating to his right to stock options are not patently
frivolous.  Rather, plaintiff asserted that his December 20, 2004
letter did not constitute a counter-offer and rejection, but
rather posed "questions."  While the court ruled against
plaintiff's interpretation, an unfavorable decision does not
render a claim frivolous.  Moreover, Rule 11 "is not intended to
chill an attorney's enthusiasm or creativity in pursuing factual
or legal theories."  <u>Greenberg v. Sala</u>, 822 F.2d 882, 887 (9th
Cir. 1997).  Therefore, because plaintiff's claims were not
frivolous, defendant's motion for Rule 11 sanctions is DENIED.[17]

/////
/////
/////
/////
/////
/////

---

[17]   Further, defendant's conduct in this litigation does
not demonstrate that they considered plaintiff's claim to be
frivolous.  Despite its assertions that plaintiff's claims were
without merit from the outset of this litigation, defendant never
filed a motion to dismiss, a motion for judgment on the
pleadings, or an early motion for even partial summary judgment.
Instead, defendant engaged in discovery.  Defendant also waited
until the dispositive motion deadline to file its motions for
Rule 11 Sanctions and Summary Judgment, both of which were
supported by a voluminous amount of papers, and seek an amount of
sanctions equal to the approximate amount of attorney's fees
litigating this action up to this point.

23

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment is GRANTED, plaintiff's cross-motion for summary judgment is DENIED, and defendant's motion for Rule 11 sanctions is DENIED.  The Clerk of the Court is directed to close this file.

IT IS SO ORDERED.

DATED: January 26, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

24